BROWER LAW GROUP
A Professional Corporation
STEVEN BROWER (SBN: 93568)
Steve@BrowerLawGroup.com
TAE J. IM (SBN: 139334)
Tae@BrowerLawGroup.com
23601 Moulton Parkway, Suite 220
Laguna Hills, CA 92653
Telephone: (949) 668-0825

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AROVAST CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GREAT AMERICAN E&S<br>INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br>**1) DECLARATORY JUDGMENT;**<br>**2) BREACH OF CONTRACT;**<br>**3) TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>**DEMAND FOR JURY TRIAL** |

## GENERAL ALLEGATIONS

**Jurisdiction and Parties**

1.　Pursuant to Local Rule 8-1, requiring that the first paragraph set forth the basis for jurisdiction, this Court has subject matter jurisdiction over this case as a matter of diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that it is between citizens of different states and the amount in controversy exceeds $75,000, as more fully alleged herein.

2.　Plaintiff Arovast Corporation ("Arovast") is a corporation, organized and existing under the laws of the State of California, with a principal place of business in the County of Orange, State of California, which is within the Central District of California.

3. Arovast is informed and believes, and therefore alleges, that Defendant Great American E&S Insurance Company ("Great American") is a corporation, organized and existing under the laws of the State of Ohio, with a principal place of business in the State of Ohio. Great American is, for the purposes of this Complaint, an insurance company.

4. Venue is proper before this Court in that Great American sold and delivered the relevant policy of insurance to Arovast in the County of Orange, which is therefore the place of the contract, and Great American also breached the obligations thereunder within the County of Orange, the place in which performance by payment of policy benefits was due, all as more fully set forth below.

**Insurance Policy**

5. Arovast purchased, from Great American a Commercial General Liability ("CGL") insurance policy, policy number PL2644811, for the policy period of November 8, 2018 through November 18, 2019 ("Great American Policy"). A copy of the policy is attached hereto as Exhibit "A".

6. Arovast is informed and believes, and therefore alleges, that Arovast provided Great American with all information requested by Great American regarding the nature and operation of Arovast prior to the issuance of the Great American Policy. Great American knew, when it issued the Great American Policy, that Arovast was intending to acquire insurance which would provide coverage for claims based on alleged negligence, specifically including but not limited to product liability, for products distributed by Arovast, which were described in the Great American policy as "Kitchen appliances and home appliances."

7. Pursuant to Insuring Clause 1.A. of the Great American Policy:
We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. . .

8. Arovast is informed and believes, and therefore alleges, that Great American drafted the Great American Policy without consultation with, or modification by, Arovast, except to the extent, if any, that Great American offered, often for an additional premium, the option of adding other and further provisions to the Great American Policy, which provisions were also drafted by Great American. As such, any ambiguity in the Great Amerian Policy must be construed against Great American and in favor of coverage for Arovast.

9. The obligations owed by Great American to Arovast, under the Great American Policy, continue in full force and effect as of this date, subject to the terms and conditions thereof. Arovast has complied with every obligation under the Great American Policy, except those which have been excused by the conduct of Great American, if any.

**Leafstedt Suit**

10. On or about January 8, 2021 a suit was filed against Arovast dba Cosori Corporation by C.A.L, a minor by and through Paul Alan Leafstadt in the District Court of Colorado ("Leafstedt Suit"). The Leafstedt Suit generally alleges that Arovast designs, manufactures, markets, imports, distributed and/or sold a "Cosori Original 6qt Pressure Cooker" model C2126-PC ("Pressure Cooker"). The Leafstedt Suit further alleges that on or about February 27, 2019 the minor plaintiff suffered serious burn injuries when the lid of the Pressure Cooker was able to be rotated and opened while the contents were still under pressure, thereby allegedly allowing the heated contents to escape and injure the underlying plaintiff.

11. The Leafstedt Suit also alleges, as is common in a product liability action, that the safety mechanisms failed and that the device should have been redesigned to incorporate safer alternatives. It also alleged, as is common in a product liability action, that the website and owner's manual for the product included certain representations such as "lid will remain locked until the float valve drops down," "latest generation multi-use kitchen appliance," and "9 safety mechanisms

ensure safe operation for daily use." The Leafstedt Suit includes causes of action for Strict Liability; Negligence; Breach of Express Warranty; Breach of the Implied Warranty of Fitness for a Particular Purpose and Breach of the Implied Warranty of Merchantability.

12. As described in the previous paragraph of this Complaint, the Leafstedt Suit was, in every common understanding of the term, a classic product liability case based on alleged bodily injury due to an allegedly defective consumer product. Although the Great American Policy included a list of excluded product types, presumably those which are determined to be uniquely dangerous or otherwise regulated, there was no indication that anything about this injury and this product were outside the mutual, reasonable and ordinary expectations of the parties to the Great American Policy, Arovast and Great American.

13. Arovast therefore had every reason to believe that the Leafstedt Suit would be covered pursuant to the terms and conditions of the Great American Policy. And, Arovast is informed and believes, and therefore alleges, that the first five claims for relief in the Leafstedt Suit would easily, clearly and reasonably be entitled to coverage, including for both defense and indemnity, under the Great American Policy and as mutually understood by the parties thereto.

14. In the Leafstadt Suit, the plaintiff also included a sixth Claim for Relief asserting that, under the Colorado Consumer Protection Act, it was a deceptive trade practice if a business "represents that goods . . . are of a particular standard, quality or grade . . . if he knows or should know they are of another." The Leafstadt Suit alleges, just as it did in the previous claims for relief, that if the underlying plaintiff had been warned regarding the alleged defects with the product, he would not have purchased it and would not have been injured.

15. Arovast timely tendered the Leafstadt Suit to Great American pursuant to the terms of the Great American Policy. Arovast is informed and believes that Great American did not request any other information from Arovast prior to sending

a letter, in response to the tender, stating that Great American had concluded that there is no coverage for the claims set forth in the Leafstadt Suit.

16. By letter dated March 11, 2021 ("Denial Letter"), Michelle James, a Senior Claims Representative with Great American Risk Solutions responded, on behalf of Great American, to the tender of the Leafstadt Suit by Arovast. The letter concluded that "Great American must respectfully disclaim coverage for Arovast based upon the Exclusion of Claims and Suits Alleging Infringement of Intellectual Property or Unfair Competition endorsement contained in the Policy." This was the sole ground for denial of coverage specified by Great American.

17. Arovast contends that reliance upon the alleged exclusion for "Suits Alleging Infringement of Intellectual Property or Unfair Competition," as a basis to deny coverage for the Leafstadt Suit, is not supported by the facts and/or the law for one or more of the following reasons:

    a. The exclusion does not actually apply in the circumstances presented because the Leafstadt Suit allegations have no proper relationship to Intellectual Property or Unfair Competition;

    b. The exclusion does not actually apply because it was not properly made a part of the Great American Policy;

    c. The exclusion does not actually apply because it would make coverage for all product liability claims illusory since standard product liability allegations, in virtually every state, would constitute potential allegations under statutes similar to the Colorado Consumer Protection Act.

    d. The exclusion does not actually apply because it is contrary to the objective reasonable expectations of an insured and there is a failure to disclose such exclusion in a manner sufficient to bring it to the attention of an insured;

    e. The exclusion was drafted and included in a manner which was intended to hide its existence from an objectively reasonable insured;

   f. The exclusion was written so as to be vague and ambiguous and deceptive such that a reasonable insured would be objectively unable to understand the intended scope of the exclusion;

   g. Discovery in this matter is continuing and Arovast reserves the right to make any other appropriate argument regarding the exclusion.

  18. Arovast denies that it is liable for the damages alleged in the Leafstadt Suit.

  19. However, Arovast affirmatively alleges that it is entitled to the payment, by Great American, of all reasonable and necessary defense costs and, if ultimately necessary, whether for settlement or judgment, indemnity, under the Great American Policy.

  20. Upon receipt of the tender from Arovast, Great American had not only the right, but the also the duty, to fully and timely investigate the Leafstadt Suit and, only after obtaining all of the factual and legal authority which it felt was appropriate, to make an appropriate and legally sufficient coverage determination. Great American knew that if it denied coverage it was precluded from raising any ground in support of that denial unless it believed, in good faith, that it could judicially prove such ground based on the facts in its possession at the time of the denial.

  21. Arovast is informed and believes, and therefore alleges, that Great American assigned responsibility for handling of the insurance claim for the Leafstadt Suit to Michelle James. Arovast is informed and believes, and therefore alleges, that the matter was assigned to Michelle James because she was the most experienced claims handler for product liability claims, and because she was familiar with California law as it applied to interpretation of insurance policies, and because she had the knowledge and experience to make strategic decisions regarding coverage, and because she had the authority to act on behalf of Great American in confirming or denying coverage and because she had the ability to fully and clearly communicate such coverage decisions for the strategic benefit of Great American

and to know that she was intentionally waiving certain items by her strategic decisions.

22. Arovast is informed and believes, and therefore alleges, that Great American considered all facts, evidence and other information which it believed was necessary and appropriate to make a full coverage determination. Arovast is further informed and believes, and therefore alleges, that Great American obtained full and complete cooperation from Arovast in that Arovast was ready, willing and able to respond to any requests for documents and/or requests for access to individuals who would have additional information which might be relevant to the coverage investigation. Great American did not request any further information from Arovast, prior to issuing its coverage decision, because Great American made a determination that it already had all the evidence which it believed it needed to make a legally binding coverage decision, including its decision to waive any matters which were not fully investigated or which were represented in a certain manner.

23. The Denial Letter purported to reserve the right to assert other and different grounds for limiting and/or denying coverage if it were determined that the sole ground stated in the Denial Letter did not actually bar coverage. However, Great American did not undertake to investigate those grounds or to explain how or if they would have any potential or actual application to the Leafstadt Suit. Arovast is informed and believes that Michelle James was aware of the law and procedure and the policies and procedures of Great American regarding the handling of claims and that, for strategic reasons and not due to negligence or lack of knowledge, she made a number of tactical decisions, within the course and scope of her authority on behalf of Great American, which was ratified by the sending of the Denial Letter which represented an intention to waive the right to assert any defense to coverage which was not properly investigated and explained in the Denial Letter.

24. By its wrongful denial of coverage, Great American has breached the contract represented by the Great American Policy. Upon such breach Arovast is

relieved of any further obligation to provide notice to Great American or to otherwise comply with most of the terms and conditions within the Great American Policy.

25. Pursuant to California Insurance Code section 790.03(h), it is unlawful for an insurer to: (2) fail to acknowledge and act promptly upon tender of a claim; (3) fail to adopt and implement reasonable standards for prompt investigation and processing of claims; (6) compel insureds, such as Arovast, to institute litigation to recover amounts due; and (13) fail to promptly provide a reasonable explanation for any denial of coverage.

## FIRST CLAIM FOR RELIEF
## DECLARATORY JUDGMENT

26. Arovast realleges and incorporates herein by reference, as though set forth in full, paragraphs 1 through 25 of this Complaint.

27. Arovast has incurred costs of defense in relation to the Leafstadt Suit, which defense costs should properly be reimbursed by Great American, and such defense should be pursuant to the limits of the policy in effect for 2012 to 2013, where the retention is only $75,000 and as to which the Federal Excess Policy applies.

28. Great American has stated that there is no coverage for the Leafstadt Suit and has failed and refused to pay for the costs of defense reasonably and necessarily incurred by Arovast.

29. There is an actual and present controversy between Arovast and Great American regarding the extent of the obligations of Great American under the terms of the Great American Policy such that this Court should issue a declaratory judgment in favor of Arovast, and against Great American, finding that there is, at a minimum, a duty to reimburse Arovast for the costs of defense in the Leafstadt Suit and should further determine that, as a result of its wrongful denial of coverage, that Great American is obligated to pay for any settlement of the Leafstadt Suit.

## SECOND CLAIM FOR RELIEF
## BREACH OF CONTRACT

30. Arovast realleges and incorporates herein by reference, as though set forth in full, paragraphs 1 through 25 of this Complaint.

31. On or about March 11, 2021, and thereafter, Great American breached the Great American Policy by failing and refusing, and continuing to fail and refuse, to pay the full amount of all reasonable and necessary Defense Costs which were incurred by Arovast in defense of the Leafstadt Suit.

32. On or about March 11, 2021, an thereafter, Great American breached the Great American Policy by failing and refusing, and continuing to fail and refuse, to pay the full amount of any settlement or judgment, thereby obligating Arovast to continue to defend the action and potentially exposing Arovast to a judgment in excess of the policy limits, for which Great American would therefore be liable.

33. Arovast has been damaged in the amount of unreimbursed defense costs which it incurred in the course of responding to and defending the Leafstadt Suit. Arovast has also been foreseeably damaged by other consequential damages which it has incurred as described herein, and subject to proof. Arovast does not know the precise amount thereof, but Arovast is informed and believes, based on defense costs already incurred, and therefore alleges, that the total amount in dispute will be in excess of $75,000 above and beyond the retention amount.

## THIRD CLAIM FOR RELIEF
## BREACH OF THE COVENANT
## OF GOOD FAITH AND FAIR DEALING

34. Arovast realleges and incorporates herein by reference, as though set forth in full, paragraphs 1 through 25 of this Complaint.

35. Great American was obligated to and must pay for defense costs and indemnity (settlement or judgment) incurred by Arovast in defense of the Leafstadt Suit.

36. The denial of coverage by Great American was unreasonable because the reason stated did not preclude coverage and therefore did not preclude a duty to defend and Great American's conduct in asserting that there was no coverage therefore constitutes a tortious breach of the covenant of good faith and fair dealing.

37. As a result of the breaches by Great American, Arovast has incurred substantial financial obligations to pay amounts for defense costs which amounts are properly covered under the Great American Policy, and potentially to pay the amount of any settlement or judgment which might be incurred. Arovast also contends that Arovast is entitled to the payment of interest from the date on which Great American should have reimbursed Arovast.

38. As a further proximate result of the breaches by Great American, Arovast has been required to expend attorney's fees and costs for experienced insurance coverage litigation counsel to obtain the insurance policy benefits to which it was entitled under the Great American Policy. Pursuant to the principles of *Brandt v. Superior Court*, Arovast is entitled to reimbursement of such amounts from Great American. Arovast is informed and believes, and therefore alleges, that the reasonable value of such damages, which will continue through the trial in this matter, will exceed the jurisdictional minimum of this Court.

39. The conduct of Great American in denying coverage based on a single exclusion which does not bar a duty to defend, and which was undertaken without a proper legal and/or factual basis, is contrary to the applicable legal principles, and is therefore conduct which is fraudulent, malicious or which, at a minimum, evidences a conscious disregard for the rights of Arovast. Moreover, Arovast is informed and believes, and therefore alleges, that such conduct is the regular business practice of Great American and has been utilized against other parties insured by Great American. Great American should therefore be required to pay punitive damages for the purpose of attempting to deter future unlawful conduct by them in an amount subject to determination by the trier of fact.

WHEREFORE, Arovast prays for judgment as follows:

ON THE FIRST Claim for Relief:

1. For a Declaratory Judgment in favor of Arovast and against Great American on every issue properly brought before this Court.

2. Such other and further Declaratory Judgment as may appear proper at the time of determination.

ON THE SECOND Claim for Relief:

3. For all unreimbursed defense costs incurred by Arovast which amounts are properly covered under the Great American Policy which amount will be in excess of $75,000.

4. For interest on sums which were not timely paid to Arovast.

5. For all other damages incurred by Arovast as a result of any breach of contract.

ON THE THIRD Claim for Relief:

6. For attorney's fees and costs incurred in this matter pursuant to the principles of *Brandt v. Superior Court*.

7. For punitive damages, subject to proof.

ON ALL Claims for Relief:

8. For interest on all sums where properly owed.

9. For costs of suit incurred herein.

10. For such other and further relief as the court may deem just.

DATED: March 31, 2021         BROWER LAW GROUP
                              A Professional Corporation


                              By: /s/ by ECF
                              _____
                                   STEVEN BROWER
                                   Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Arovast hereby demands a trial by jury as to each claim and/or issue as to which it is so entitled.

DATED: March 31, 2021

BROWER LAW GROUP
A Professional Corporation


By: /s/ by ECF
STEVEN BROWER
Attorneys for Plaintiff